UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 05-238 (JDB) |
| | : | |
| v. | : | |
| | : | |
| **DAMANI WILLIAMS,** | : | |
| defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this opposition to defendant's Motion to Suppress Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**FACTS:**

      Defendant Damani Williams has been indicted in a four-count indictment with the charges of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year; Unlawful Possession with Intent to Distribute Cocaine; Unlawful Possession with Intent to Distribute Heroin; and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense.

      The charges arise from events which occurred on May 23, 2005. On that day, Investigator Derrick Hyman, of the Metropolitan Police Department's Fourth District Focus Mission Unit, secured a warrant to search the premises at xxx xxx xxxxx St., N.W., Washington, DC. As part of the probable cause for the warrant, Investigator Hyman relied upon anonymous information that he had received that narcotics were being sold from xxx xxx xxxxx St., N.W.,

Washington, DC.  Investigator Hyman also relied upon a controlled buy with a confidential informant ("CI").  Within seventy-two hours prior to the application for the search warrant, the CI, working with Investigator Hyman, went into xxx xxx xxxxx St., N.W. and purchased powder cocaine from the basement of the house from an individual known to it as "DJ[1]."  The CI then turned the powder cocaine over to Investigator Hyman.

After Investigator Hyman secured the search warrant, he went to the area of the Unit block of Madison St., N.W., Washington, DC, a high drug area, to conduct surveillance of suspected drug activity.  While conducting surveillance, Investigator Hyman observed Anthony Lightfoot sitting in the driver's side of a 1999 Toyota with Utah tags.[2]  Hyman then observed the defendant walking away from the yard of a known drug dealer with something in his hand.  The defendant then got into the front passenger side of Lightfoot's 1999 Toyota.  Lightfoot and the defendant then began to drive off.  Investigator Hyman suspected that the defendant had just engaged in a drug transaction with the individual who lived in the house from which the defendant was coming.  Therefore, Hyman radioed to marked units in the area, and asked the marked units to attempt to make contact with the defendant.  A marked unit arrived in the area and got behind the 1999 Toyota.  The Toyota, driven by Anthony Lightfoot, stopped.  Other marked units arrived in the area, and at that point, the 1999 Toyota then took off, in an attempt to elude the police.  Marked units followed the Toyota with lights and sirens activated for several blocks.  As the Toyota was fleeing from the police, the officers observed the defendant shaking a

---

[1] The defendant is known by the nickname, "DJ."

[2] Hyman was familiar with Anthony Lightfoot, and was aware that Anthony Lightfoot was known to carry guns on him.

white powder substance out the window of the car onto the street. In the xxxx block of x$^{xx}$ St., N.W., the 1999 Toyota struck a parked vehicle and came to a rest. At that point, both the defendant and Anthony Lightfoot got out of the car and started running. Officers gave chase, and were able to apprehend the defendant. On the front passenger floor board of the 1999 Toyota, Officers observed a white powder substance. The substance was field tested, and tested positive for cocaine. The defendant was placed under arrest.

Roughly forty-five minutes after the defendant's arrest, members of the Fourth District Focus Mission Unit executed the warrant at xxx xxx xxxxx St., N.W. When officers arrived at that location, they were met by the owner of the house, a 91-year-old woman. Although the officers did have a search warrant, the homeowner informed them that they did not need a warrant to search her house. She invited the officers in and provided them with information about the people who were staying in her house. The homeowner informed the officers that an individual, whom she identified as "DJ," was staying in the front bedroom in the basement. She further informed officers that an individual named "Mitch," who was also at the house when the officers executed the warrant, stayed in the back bedroom in the basement.[3] The homeowner also told the officers that she stayed in the front bedroom upstairs, and that her nephew, Tony Lightfoot, stayed in the upstairs rear bedroom.

Officers executed the search warrant, and searched the house, including the basement and the upstairs bedroom identified as Tony Lightfoot's. During the execution of the warrant, officers seized numerous items related to illegal narcotics trafficking, including cocaine, heroin, drug packaging paraphernalia, firearms, ammunition, and mail matter.

---

[3] "Mitch" has been identified as Mitchell Goings.

In the bedroom which the homeowner identified as DJ's (the front basement bedroom), officers recovered the following:

(1) a blue plastic trunk with numerous items inside, including: a sandwich bag containing white powder; a clear ziplock containing two blue ziplocks with tan powder; strainers; a 9mm Ruger pistol; 9mm ammunition; a plastic bag containing .380 ammunition; a clear ziplock containing numerous clear ziplocks with an apple design; empty clear, pink and blue ziplocks; Manitol bottles; a scale with white residue; and a Tanita electronic scale;

(2) an Altoid tin can containing a ziplock with a white powder substance;

(3) a black bowl with a churning stick, containing white powder residue;

(4) mail matter in the name of Damani Williams;

(5) a book;

(6) a Motorolla talk-about;

(7) a .40 caliber carbine rifle, loaded with .40 caliber ammunition;

(8) a black shoulder bag containing strainers; a plastic spoon; a surgeon's mask; and ziplocks with white reside.

From the bedroom which the homeowner identified as "Mitch's" (the rear basement bedroom), officers recovered the following:

(1) numerous ziplocks containing white residue;

(2) glass tubes with white residue;

(3) a plastic bottle with white residue;

(4) an ID card and mail matter in the name of Mitchell Goings.

From the dining room table, officers recovered a cellular phone. From a bedroom which the homeowner identified as Tony Lightfoot's (the upstairs rear bedroom), officers recovered the following:

(1) mail matter, a Maryland driver's permit, and an address book;

(2) .22 caliber rifle ammunition;

(3) a .380 handgun magazine;

(4) a shoe box containing spoons with white residue; a glass tube with white residue; a strainer with residue; a metal pushrod; one clear ziplock with white powder; and a black leather case containing a digital scale.

Defendant has now filed a motion asking the Court to suppress all evidence seized by the police in connection with the car stop as the fruit of an illegal stop, search, and arrest. Defendant further moves to suppress any evidence seized as a result of the search warrant executed at #26 Van Buren St., N.W. Defendant's motion is without merit, and should be denied.

## ARGUMENT:

I.   **SEARCH WARRANT EXECUTED AT xxx xxx xxxxx ST., N.W.**

  A.   **Defendant Has Not Demonstrated That He Has Standing to Challenge the Seizure of Items from the House**

Fourth Amendment rights are personal rights, which may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133 (U.S. 1978). When a criminal defendant moves to suppress evidence, the question becomes whether the search or seizure violated the Fourth Amendment rights of the particular defendant who seeks to exclude the evidence obtained during the search and seizure. Id. at 140. This inquiry requires a determination of whether the disputed search and seizure has infringed an interest of the defendant. Specifically, the defendant must establish that

he had a "legitimate expectation of privacy in the invaded place." United States v. Hicks, 978 F.2d 722, 723 (D.C. Cir. 1992) (quoting Rakas, supra, 439 U.S. at 143, internal quotations omitted). Further, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Caicedo-Llanos, 960 F.2d 158, 163 (D.C. Cir. (1992) (quoting Rakas, supra 439 U.S. at 131, internal quotations omitted).

In this case, defendant has not met his burden of establishing that his own Fourth Amendment rights were violated by the search of the xxx xxxxx Street house, and the seizure of the items therein. First, in his motion, defendant fails to identify which items of evidence he seeks to suppress. Therefore, the government must assume that defendant is seeking to suppress all of the evidence recovered from the house. Defendant cannot demonstrate that he has a legitimate expectation of privacy throughout the Van Buren Street house, and therefore cannot show that he had a legitimate expectation of privacy in all of the areas searched.

The xxx xxxxx Street home is owned by a 91-year-old woman, who was renting rooms to three other people. Therefore, the defendant cannot demonstrate that he had a legitimate expectation of privacy in all rooms in the house. The government would also assert that the defendant cannot claim a legitimate expectation of privacy in rooms which were specifically rented and used by other people. For example, the homeowner identified the upstairs rear bedroom as the room rented and used by Tony Lightfoot. She identified the basement rear bedroom as the room rented and used by Mitchell Goings. The defendant is unable to demonstrate that he had a reasonable expectation of privacy in the rooms specifically rented and

used by these other people. Therefore, he lacks standing to move to suppress the items of evidence seized from those rooms.

Further, the government would assert that defendant has not met his burden in establishing that he has standing to challenge the search of the front basement bedroom. From questions elicited by defense counsel at the preliminary hearing, it seems likely that at trial, defendant will argue that the front basement bedroom was an open area, and that many people had access to it. The government's evidence at a hearing on this motion will show that the defendant's room was in an open area of the basement, with no doors blocking it off from the rest of the house. Further, individuals had to walk through that room to get to the bedroom at the rear of the basement. Therefore, the defendant is unable to meet his burden of demonstrating that he had a reasonable expectation of privacy in the front basement bedroom, and does not have standing to challenge the seizure of items from that bedroom.

**B.    The Items Taken from the House Were Seized Pursuant to a Lawful Search Warrant**

Even if the Court finds that the defendant has demonstrated standing to challenge the search and seizure of items from the xxx xxxxx Street house, the items were seized pursuant to a lawful search warrant. The Supreme Court has often expressed a preference that searches be conducted pursuant to warrants, which are issued by "neutral and detached" magistrates who make an independent determination of the probable cause set forth in the affidavit accompanying the search warrant. Johnson v. United States, 333 U.S. 10, 14 (1946). In evaluating whether an affidavit establishes probable cause to support a search, the magistrate (or judge) must employ a

"totality of the circumstances" test. Illinois v. Gates, 462 U.S. 213, 231 (1983). Under the totality of the circumstances test,

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ...concluding" that probable cause existed.

Id. at 238-239 (citation omitted).

The Supreme Court, noting that reasonable minds may differ on the question of whether probable cause exists, has concluded that the "preference for warrants is most appropriately effected by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984) (citations omitted).

However, even if a reviewing court determines that the warrant affidavit was lacking in probable cause, suppression of evidence obtained in execution of the warrant is not necessarily the appropriate remedy. In Leon, the Supreme Court recognized a "good faith" exception for searches conducted pursuant to warrants. 468 U.S. at 914. In that case, the Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. An officer's reliance on the magistrate's probable cause determination must be objectively reasonable. Id. However, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a

magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. (internal citations and quotations omitted).

The "good faith" exception is not applicable in all cases, and suppression of evidence remains an appropriate remedy in certain circumstances. Suppression remains an appropriate remedy if the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless regard for the truth. Id.; Franks v. Delaware, 438 U.S. 154 (1978). The "good faith" exception will also not apply in cases where the magistrate has wholly abandoned his judicial role. Leon, 468 U.S. at 923. Suppression will also be appropriate in cases where an officer relies on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (internal citations and quotations omitted). Finally, suppression may also be appropriate in cases where a warrant is so facially deficient that the executing officers cannot reasonable presume it to be valid. Id. (citations omitted).

In this case, Investigator Hyman presented an Affidavit in Support of a Search Warrant to a D.C. Superior Court Judge. The Judge found that Investigator Hyman's affidavit demonstrated probable cause to search the premises at xxx xxx xxxxx St., N.W., Washington, DC, and signed off on the warrant. The warrant is valid on its face, and defendant's challenge to it must fail. Hyman's affidavit in support of the search warrant detailed his experience, his basis of knowledge of the person who supplied him with information about the xxx xxxxx Street house, and it demonstrated a fair probability that contraband or evidence of a crime would be found at the xxx xxxxx Street house.

Defendant cites the case of United States v. Richardson, 861 F.2d 291 (D.C. Cir. 1988) and argues that the case at hand is analogous. However, Richardson differs from the case at hand in two important respects. First, in Richardson, the Court specifically found that the warrant affidavit contained a false statement. 861 F.2d at 293. In the case at hand, defendant has not produced any evidence to show that the affidavit contained false statements.

Second, the affidavit in the case at hand contained more information than in the warrant affidavit in Richardson. Defendant notes that the Richardson Court specifically stated, "it is unclear whether the fact of the controlled buy alone is sufficient under such circumstances to demonstrate probable cause without other corroborating evidence." Id. at 294. However, the Richardson Court listed other "corroborating evidence" which would contribute to the probable cause finding in controlled buy cases. Id. One example that the Court gives is information that the confidential source has proven reliable on other occasions. Id. In the case at hand, Investigator Hyman did provide information in his affidavit concerning the track record of the confidential informant:

> In the past (IT) has provided information which has been corroborated by MPDC narcotics investigators, resulting in the arrest of numerous individuals for felony and misdemeanor narcotic offenses. (IT) has provided information about open air drug markets along with the identity of person trafficking narcotics in those markets. The information resulted in the seizure of crack cocaine and heroin. (IT) was debriefed concerning narcotic drug trafficking and (IT) provided factual information. No information that was provided by (IT) has ever been proven to be false.

Affidavit in Support of an Application for Search Warrant (Attachment A).

Further, Investigator Hyman included other corroborating evidence in the affidavit:

> Your affiant conducted surveillance at xxx xxx xxxxx Street, Northwest, Washington, D.C. during day and night time hours and observed pedestrian and vehicle traffic

10

> going in and out of the premises. Based on the past narcotic investigative experience of your affiant, the surveillance and the quantity of cocaine purchased from inside xxx xxx xxxxx Street, Northwest, Washington, D.C., it is your affiant's belief that narcotic trafficking is occurring from inside this address.

Id.

As the above discussion reveals, the case at hand is distinguishable from Richardson. In the case at hand, the affidavit contains more information than just the fact of the controlled buy. In this case, Investigator Hyman's affidavit clearly demonstrates probable cause, and defendant has not provided any evidence that the affidavit contains false statements. Therefore, there is no basis upon which to disturb the Superior Court Judge's finding of probable cause. Because the search of xxx xxx xxxxx Street was conducted pursuant to a lawful search warrant, there is no basis to suppress the evidence seized therefrom.

   **C. There Was No Violation of the Knock and Announce Requirement**

In his motion, defendant references the knock and announce requirement. However, he fails to indicate how that requirement was violated in this case. Simply put, there was no violation of the knock and announce requirement in this case. Officers knocked on the front door of xxx xxx xxxxx St., N.W. The homeowner answered the door, and the officers explained that they had a warrant to search her home. At that point, the homeowner informed the officers that they did not need a warrant to search her home, and she politely invited them in. Based on those circumstances, defendant cannot show that the police violated the Fourth Amendment's knock and announce requirements.

11

## II.     EVIDENCE RECOVERED FROM THE 1999 TOYOTA

### A.     The Officers had Reasonable, Articulable Suspicion to Stop the Car Which Developed into Probable Cause

Terry v. Ohio, 392 U.S. 1, 20 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made.  The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30.  The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances.  Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. United States v. Sokolow, 490 U.S. 1, 8-9 (1989).  "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason, while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).  Further, a suspect's unprovoked

flight from a police officer in a high crime area can provide an officer with articulable suspicion for a Terry stop.  Illinois v. Wardlow, 528 U.S. 119 (2000).

In this case, the officers has reasonable, articulable suspicion to stop the 1999 Toyota in which defendant was riding.  After Investigator Hyman secured a search warrant for the Van Buren Street house, but prior to the time that he actually executed the search warrant, Hyman encountered the defendant and another individual in the Unit block of xxxxxxx St., N.W.  Hyman was familiar with the defendant, and when he observed the defendant walking towards the 1999 Toyota, immediately recognized him as "DJ," who lived at the Van Buren Street house.  And, at that point, Hyman had already gathered probable cause that narcotics were being sold out of the Van Buren Street house.  Further, when Hyman saw the defendant, the defendant was in a high drug area, walking away from a house where Hyman knows that drugs are sold.  Hyman observed the defendant walking away from that house, carrying something in his hand, and then get into the 1999 Toyota.  Based upon the totality of the circumstances, Investigator Hyman had a reasonable suspicion that the defendant had just purchased drugs from the house.  Therefore, he radioed for other units to stop the 1999 Toyota to make contact with the defendant.  One marked unit got behind the Toyota, and the Toyota stopped.  At that point, the car had been stopped pursuant to a lawful Terry stop, based upon Hyman's articulable suspicions that the defendant had just engaged in a drug deal.

Once more units arrived, the 1999 Toyota fled, taking police on a chase throughout the city streets.  This unprovoked flight added to the reasonable suspicion that the officers already had that the occupants of the car were involved in illegal activity.  As the defendant and the other occupant of the car were fleeing from the police, the officers observed the defendant throwing

13

white powder out of the car. This, especially in light of Hyman's earlier observations, added to the officers' mounting suspicions that illegal activity was underfoot. Additionally, by that point in time, the reasonable suspicion to conduct a Terry stop had actually developed into probable cause that the defendant and Lightfoot were committing the offense of Fleeing a Law Enforcement Officer, in violation of 22 D.C. Code, Section 50-2201.01 et seq.

Once the defendant bailed from the car, the seizure of the white powder from the floorboard was lawful under two alternate theories. First, the white powder on the floorboard was in plain view. Under the "plain view" doctrine, if while lawfully engaged in an activity in a particular place, officers perceive a suspicious object, they may seize it immediately. Texas v. Brown, 460 U.S. 730, 739 (1983); see also Delaware v. Prouse, 440 U.S. 648, 645-655 (1979).

In this case, the officers had attempted to stop the 1999 Toyota based upon a reasonable articulable suspicion that the occupants of the car were engaged in illegal activity. Further, after the 1999 Toyota crashed into another car, the officers also had an accident scene on their hands. Therefore, the officers were lawfully engaged in activity that centered around the 1999 Toyota. When the officers saw the white powder on the floorboard, they immediately recognized it as potentially being cocaine (although they could not confirm this until a field test was performed). Therefore, the officers could legally seize the white powder substance without a warrant, pursuant to the plain view doctrine.

Under an alternate theory, the officers could seize the white powder substance because they had probable cause that the car contained contraband, and could lawfully search the car for contraband. Because vehicles are both mobile and highly regulated, where police have probable cause, they need not get a warrant to search an automobile. See California v. Acevedo, 500 U.S.

565 (1991). Further, such searches may be conducted even where there is no exigency. Pennsylvania v. Labron, 518 U.S. 938 (1996). In this case, the government would submit that in the totality of the above-detailed circumstances, by the end of the chase, the police had developed probable cause to believe that the car would contain illegal contraband. Because they had developed probable cause, they could lawfully search the 1999 Toyota and seize the white powder substance from the floorboard without a warrant.

The defendant has not demonstrated that the cocaine recovered from the floorboard of the 1999 Toyota was illegally obtained. Therefore, there is no basis for its suppression.

WHEREFORE, the government respectfully requests that the Court DENY defendant's Motion to Suppress Evidence.

Respectfully Submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
TONYA SULIA
ASSISTANT UNITED STATES ATTORNEY
555 4th Street, N.W., Room 4243
Washington, DC 20530
(202) 305-2195   FAX:  (202) 353-9414